UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVON DARRELLE DAVIS, CDCR #F-97032, <br><br> Plaintiff, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS; SGT. M. ACUNA; C/O D. ARROYO; C/O V. HERNANDEZ, <br><br> Defendants. | Case No.: 3:21-cv-02047-GPC-KSC <br><br> **ORDER** <br><br> **1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]** <br><br> **AND** <br><br> **2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)(1)** |

Plaintiff Devon Darrelle Davis, a transgender inmate incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, has filed a pro se civil rights Complaint pursuant 42 U.S.C. § 1983.[1] *See* Compl., ECF No. 1. Plaintiff claims the California Department of Corrections ("CDCR"), RJD Sergeant M. Acuna, and Correctional Officers V. Hernandez and D. Arroyo violated her Eighth Amendment rights

---

[1] Because Davis identifies as transgender, the Court will refer to her using feminine pronouns unless she later indicates a preference otherwise.

on July 12, 2021 by denying her "access to a toilet" and an adequate supply of toilet paper. *See id.* at 1–2. Davis seeks $1,100,000 in general and punitive damages, and demands that Defendants be "removed from their office" and prosecuted for violating 28 U.S.C. §§ 241 and 242. *See id.* at 7.

Plaintiff did not prepay the $402 civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing, but instead has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2.

**I.   Motion to Proceed In Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if she is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether her action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of her IFP Motion, Davis has submitted a copy of her CDCR Inmate Statement Report and a prison certificate authenticated by a RJD Accounting Officer and attesting as to her trust account activity pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *See* ECF No. 4, *Andrews*, 398 F.3d at 1119. These documents show although Davis carried an average monthly balance of $913.46 and had $394.66 in average monthly deposits to her trust account during the six months preceding the filing of this action, she had an available balance of only $.11 at the time of filing. *Id.* at 1, 3.

Therefore, the Court grants Davis's Motion to Proceed IFP (ECF No. 2) and assesses a partial initial filing fee of $182.69 pursuant to 28 U.S.C. § 1915(b)(1), but declines to order the collection of that initial fee at this time because her prison certificate indicates she currently has "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

/ / /

/ / /

**II.   Sua Sponte Screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)**

   A.   <u>Standard of Review</u>

Because Davis is a prisoner and proceeding IFP, her Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.   Factual Allegations

On July 12, 2021, Davis alleges Defendants CDCR, RJD Sgt. Acuna, and RJD Correctional Officers Arroyo and Hernandez violated her Eighth Amendment rights. Specifically, Davis claims while she was assigned to RJD's Facility C "Transgender and Medical Yard," she first asked Hernandez during dinner at 5:30 p.m. for toilet tissue because she was "completely out" and had an "urgent" need to defecate and "properly clean [her]self." *See* Compl. at 3, 11. Davis alleges Officer Gomez was supposed to bring some tissue earlier that day, but Gomez "left work" and forgot.[3] *Id.* at 11. Hernandez said she would bring Davis some tissue after dinner. *Id.*

During the 6:00 p.m. "medical pass," Davis was still without toilet paper, so she "walked to the C/O Office" and again told Hernandez she "desperately need[ed] to remove [sic] [her] bowels." *Id.* at 11. Davis informed Hernandez that Gomez had left three full rolls of tissue in her office and insisted Hernandez give her some because the matter was "non-negotiable" and she was "near to defecating on [her] person." *Id.* When Hernandez indicated she would first need to clear the request with her partner, Officer Arroyo, Davis "tried to reason" with Hernandez, noting that in the time they spent "debating," Hernandez could have given her the toilet paper and Davis "could have already been back to [her] cell on the toilet." *Id.*

Officer Arroyo also told Davis she'd have to wait. *Id.* Davis "informed C/O Arroyo of the urgency" and insisted she needed the tissue "now." *Id.* at 4, 12. In response, Arroyo "entered the office and t[ore] 10 squares approx. off a full roll" and handed them to Davis, but she requested more. *Id.* Arroyo replied: "If this is not enough then I am not giving you any," threw the tissue on her desk, and left. *Id.* at 4, 12.

After this "heated exchange of words," Davis "realize[d] the office door was not shut[], enter[ed] … on [her] own accord, and fix[ed] [her]self a portion of toilet paper due

---

[3] Officer Gomez is not named as a Defendant.

to the impe[n]ding arrival of defecation," and then "tried to [get] to [her] cell" to access a toilet, as Hernandez and Arroyo "pressed their alarm for backup." *Id.* at 12.

Sgt. Acuna and other responding officers arrived in the housing unit just as Davis approached her cell on the top tier. *Id.* Davis told Acuna "I don't mind cuffing up," but claimed she needed to defecate "at this second," sought permission to enter her cell "only [to] use the toilet," and suggested Acuna could observe from the doorway. *Id.* The Sergeant refused, ordered Davis to "cuff up" and told Davis she could instead "use the toilet approximately 150 yards away in the gym area." *Id.* When Davis insisted she "could not make it down the stairs," Acuna told her "I am not letting you [] in the cell," and "If you [] have to go that bad go on the floor." *Id.* at 5, 13. At this point Davis claims she was not "able to hold off any longer" and defecated on herself in front of the cell door. *Id.* at 5. She claims Acuna then placed her inside a holding cage for 2-3 hours "without the opportunity to fully clean herself," which resulted in a "rash and irritation along [her] inner thighs, testicles, and buttocks." *Id.* at 5, 13.

C. <u>Analysis</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

1. "Persons"

With the exception of the CDCR, which is not a "person" subject to suit under Section 1983, but is instead an arm of the State and subject to *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(ii), *see Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983"), Davis alleges Sgt. Acuna and Officers Hernandez and Arroyo were employed as correctional officials at RJD and acted in their individual and officials capacities when they allegedly denied her a sufficient supply of toilet paper

and access to the toilet in her cell on July 12, 2021. *See Atkins*, 487 U.S. at 48 ("State employment is generally sufficient to render the defendant a state actor."). Therefore, the Court next considers whether Davis has alleged a plausible Eighth Amendment violation against Defendants Acuna, Hernandez, and Arroyo.[4]

   2.   *Eighth Amendment – Cruel and Unusual Punishment*

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but "not every injury that a prisoner sustains while in prison represents a constitutional violation." *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Instead, a prisoner claiming an Eighth Amendment violation must allege facts to plausibly show: (1) the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials acted with deliberate indifference to a serious risk to her health or safety in allowing that deprivation to take place. *Farmer*, 511 U.S. at 834; *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

As pleaded, the Court finds Defendants Acuna, Hernandez, and Arroyo's failure to provide Davis with the amount of toilet paper she demanded and immediate access to the toilet in her cell, as opposed to 10 squares of paper and access to different toilet 150 yards

---

[4] To the extent Davis seeks criminal prosecutions pursuant to 18 U.S.C. §§ 241 and 242, *see* Compl. at 7, however, her claims must be dismissed. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (noting that 18 U.S.C. §§ 241 and 242 "provide no basis for civil liability."); *Ashraf v. Reliance Motors, LLC*, 2020 WL 7382101, at *3 (C.D. Cal. Dec. 10, 2020) (ruling that private citizens lack standing to pursue claims for violations of criminal statutes, including 18 U.S.C. § 241), *aff'd,* 859 F. App'x 783 (9th Cir. 2021); *Gilliam v. Glassett*, 2019 WL 150541 (D. Haw. Jan. 9. 2019) (stating that private citizens lack standing to bring criminal claims); *McDonald v. Lee*, 2015 WL 4758012, at *3 (E.D. Cal. Aug. 11, 2015) (ruling that private citizens lack standing to prosecute federal crimes).

away, simply do not rise to the level of an "objectively, sufficiently serious" deprivation under the Eighth Amendment. *Farmer*, 511 U.S. at 834.

"[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). But to "the extent that … conditions are [merely] restrictive [or] even harsh, they are part of the penalty that criminal offenders pay for their offenses against society," and do not offend Eighth Amendment principals. *Id.* at 347. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities'" like food, clothing, shelter, medical care, and safety are "sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Puckett v. Houston*, No. 2:17-CV-0640 KJN P, 2017 WL 2619121, at *3 (E.D. Cal. June 16, 2017) (finding deprivation of prisoner's "certain privileges, including packages, TV, radio, special purchases, and [] property," were not "objectively serious deprivations" because they did not "constitute the denial of life's minimal necessities."). Allegations involving insufficient amounts of toilet paper, on the other hand, simply "do not impinge on a constitutionally protected basic human need and do not rise to the level of cruel and unusual punishment." *Obataiye-Allah v. Gilbertson*, No. 2:19-CV-00135-JR, 2019 WL 2303844, at *2 (D. Or. May 29, 2019); *see also Lyons v. Skolnik*, 502 Fed. Appx. 712, 713 (9th Cir. 2013) (prison's policy of providing inmates with only one roll of toilet paper per week, and requiring inmates to purchase extra toilet paper if they wished to exceed that allotment, did not amount to denial of minimal civilized measure of life's necessities, in violation of Eighth Amendment); *Macy v. Post*, No. CV 14-18-H-DLC-RKS, 2015 WL 105584, at *4 (D. Mont. Jan. 7, 2015) (finding prisoner's allegation of being "deni[ed] … toilet paper on three occasions over the course of less than two months" did not "meet the objective test for cruel and unusual punishment.").

Davis has also not alleged facts sufficient to plausibly show Defendants Hernandez, Arroyo, or Acuna "kn[ew] of and disregard[ed] an excessive risk to [her] health or safety"

when they allegedly failed to provide her with more than 10 squares of toilet paper or suggested she use a toilet outside her cell. *See Farmer*, 511 U.S. at 837.

While admittedly humiliating, the Court finds Davis's allegations fail to state a claim upon which Section 1983 relief can be granted, and dismisses her Complaint sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and § 1915A(b)(1).

### III.     Conclusion and Orders

For the reasons discussed, the Court:

1)     **GRANTS** Davis's Motion to Proceed IFP (ECF No. 2).

2)     **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Davis's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from her account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3)     **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4)     **DISMISSES** Davis's Complaint sua sponte and in its entirely based on her for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

5)     **GRANTS** Davis 60 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted, if she can. Davis's Amended Complaint must be complete by itself without reference to her original pleading. Defendants not named and any claim not re-alleged in her Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the

original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Davis fails to file an Amended Complaint within 60 days, the Court will enter a final Order dismissing this civil action based both on her failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and § 1915A(b) and her failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  May 17, 2022

Hon. Gonzalo P. Curiel
United States District Judge